# COURT OF APPEALS OF TEXAS.

## AUSTIN TERM, 1884.

### No. 2932.

### DANIEL HARDEMAN *v.* THE STATE.

1. FRAUDULENT DISPOSITION OF MORTGAGED PROPERTY.—To constitute the offense denounced by Article 797 of the Penal Code, the property upon which the lien was given must have been "personal or movable property" at the time the lien was executed. The sale or other disposition of real property on which the owner had executed a written lien is no offense against the laws of this State.

2. SAME—PLEADING.—REPUGNANCY in an indictment arises when it contains an allegation which is directly contradicted by other statements in the indictment. See the opinion in this case in illustration.

3. SAME.—MOVABLE PROPERTY is such as attends the person of the owner wherever he goes, in contradistinction to things immovable. Under this rule it is *held* that a growing crop is immovable property. See the opinion *in extenso* on the question.

4. SAME—PERSONAL PROPERTY—INDICTMENT.—If the property sold or otherwise disposed of while subject to an existing written lien be personal though not movable property, the sale or disposition of it brings the offense within the meaning of Article 797 of the Penal Code. But, to be sufficient to charge the offense, the indictment must allege that the property was personal property.

5. SAME.—An ungathered crop still appendant to the ground can, under no circumstances, be held movable property, and cannot partake of the character of personal property until ready for harvest.

6. SAME—INDICTMENT.—The indictment charged in substance that, having executed a valid mortgage lien in writing upon "eighteen acres of cotton, then and there being movable property," the defendant subsequently sold the same with intent to defraud his mortgagee. *Held*, insufficient to charge any offense against the laws of this State.

APPEAL from the District Court of Ellis. Tried below before the Hon. G. N. Aldredge.

The offense attempted to be charged against the appellant was the fraudulent disposition of mortgaged property, the count against him in the indictment being in substance that, having on the third day of June, 1882, executed to one J. E. Wilson a valid mortgage lien in writing "upon eighteen acres of cotton, then and there being movable property," he subsequently, on the first day of October, 1882, sold the said cotton to divers persons with intent to defraud the said Wilson. The jury rendered a verdict of guilty against the appellant, and assessed his punishment at confinement in the penitentiary for the term of two years.

The State first introduced in evidence the mortgage described in the indictment, and, by the witness J. E. Wilson, proved its execution by the appellant. Wilson further testified that the mortgage had never been satisfied. He had never consented to the sale of the cotton by the appellant to any one. Subsequent to the execution of the mortgage the appellant had avoided the witness. The witness, however, encountered the appellant in Waxahachie, in September, 1883, and asked him about the debt. Appellant replied that witness could not make it out of him. He then asked the witness if Felix Hardeman had not paid the debt for him. Witness replied that he had not. The appellant then said that a man living on Chambers creek owed him twenty-five dollars, which he would collect and pay over to the witness. Witness never saw the appellant afterwards until his arrest.

The substance of the testimony of Richard Cunningham, a witness for the State, was that, in the fall of 1882, through a third party, he purchased of the appellant the cotton crop grown by him that year.

Felix Hardeman, introduced by the defendant, denied that he ever promised to pay the defendant's debt to Wilson, that he had ever paid, or that he had ever told Sims, John Hardeman or other person that he had paid or had ever agreed to pay it. Witness owed the defendant nothing; the balance of ten dollars which he once owed the defendant for work having been boarded out with him by defendant after he quit work for him. Defendant told the witness of the mortgage just after its execution, and cautioned witness in the event he should encounter Wilson, to make his statement of the mortgage transaction harmonize with the defendant's statement to him, the witness, regarding the mortgage. The defendant's witnesses had attempted to prevail upon the witness to testify that he, the witness, was in

the defendant's debt, and had promised to pay Wilson the amount of the claim he held against the defendant.

W. D. Sims, for the defendant, testified that the defendant worked two months for Felix Hardeman in the spring of 1882. Witness asked Felix if he had not promised to pay the defendant's debt to Wilson. Felix replied that he had so promised, and the witness communicated the fact to the defendant.

John Hardeman, the defendant's brother, testified in his behalf that in the summer of 1883 Felix Hardeman told him that pursuant to a promise he had previously made the defendant, he had paid the defendant's debt to Wilson. Witness asked to see the receipt. Felix replied that he did not have it at hand. Not satisfied, the witness went to Wilson and asked him of the truth of this statement. Wilson said that Felix was a liar, and that if he faced him with such a statement he, Wilson, would "jug" him. Witness repeated this to Felix in presence of the defendant, and Felix said that Wilson was a d—d liar, and that he would face him.

The motion for new trial assailed the competency of the mortgage as evidence, because not properly acknowledged, and not of record, and denounced the verdict as unauthorized by the evidence.

*Amzi Bradshaw,* for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

WILLSON, JUDGE. In substance the indictment charges that the defendant, on the third day of June, 1882, executed to J. E. Wilson a valid mortgage lien, in writing, upon "eighteen acres of cotton, then and there being movable property," "and that he thereafter, on the first day of October, 1882, sold said cotton to divers persons with intent to defraud said Wilson," etc.

To constitute the offense attempted to be charged in this indictment, the property upon which the lien was given must have been "personal or movable property" at the time such lien was executed. (Penal Code, Art. 797.) It is no offense against the law of this State to sell or otherwise dispose of real property upon which the owner has given a written lien.

Before proceeding further we should determine what meaning should be given to the words "eighteen acres of cotton," used in the indictment in describing the property mortgaged.

We think that but one reasonable signification can be placed upon them, and that is that the property consisted of a cotton crop growing upon eighteen acres of land. This would be the ordinary signification of the words, and they must be thus understood. (Rev. Stats., Art. 3138; Penal Code, Art. 10.)

What character of property is a crop of growing cotton, considered with reference to the offense of which defendant stands convicted? Is it "movable property" within the meaning of Article 797 of the Penal Code? If not, then it is unnecessary to consider this case further, because it is to that character of property alone that this indictment applies.

It is true that the indictment alleges that the eighteen acres of cotton were *movable* property. Such allegation, however, is but a conclusion of the pleader's and is not sufficient unless the other statements show that it was that kind of property. Thus, suppose the allegation had been that the property consisted in eighteen acres of land, followed by another allegation that the land was movable property; it would not be contended that the latter controlled the former allegation, and that therefore the indictment charged the offense known to the law. The two allegations would be repugnant to and contradictory of each other, and the indictment would unquestionably be bad. But suppose in the case before us the allegation had been that the property consisted in so many pounds of cotton, and that the same was personal property, or was movable property, these allegations would have been consistent with each other, and the latter would have determined the character of the property. In this case the allegation that the property was *movable* can add nothing to the sufficiency of the indictment, unless the description of the property, "eighteen acres of cotton," may mean cotton in that state or condition which would render it movable property.

We now recur to the question, is growing cotton *movable* property, as alleged in the indictment? "Movable" property is such as attends a man's person wherever he goes, in contradistinction to things *immovable*. (2 Bouvier's Law Dic., word "*Movables*.") Thus money, jewelry, clothing, household furniture, boats and carriages are said to follow the person of the owner wherever he goes; they need not be enjoyed in any particular place; and hence they are *movable*. (1 Schouler's Per. Prop., p. 25.) Certainly a crop of cotton growing upon land cannot by any stretch of the rules of construction be brought

within this definition of movable property. It is most clearly a thing immovable. It may, however, become movable. Says the author last quoted: "Fruits, so long as they are hanging on the trees, *the crops until they are gathered,* and timber trees while they are standing, are *things immovable,* or real estate, because they are attached and appendant to the ground. But when the fruits or crops are gathered, or the trees cut down, as they then cease to be attached to the soil, they become *movables."* · (1 Schouler's Per. Prop., p. 123.) We think it too plain to be controverted, or to require a further investigation of authorities, that a crop of growing cotton is *immovable* property, and is not within the meaning of "movable property" as used in the article of the Penal Code under which this conviction was obtained.

But it may be said that the cotton was *personal* if not *movable* property, and if so that the offense attempted to be charged could be committed in relation to it. This position is correct. If the property be either *personal* or *movable* it is the subject of the offense denounced by the Code. It is to be observed, however, that this indictment does not allege, or in any manner show, that the property was *personal* property. It characterizes the same as *movable* property, and the two words are by no means synonymous in their legal signification, and do not mean the same thing in the Code. There may be *personal* property which is not *movable.* *Personal* property not only includes *movable* property, but more. It is a more comprehensive word. Thus, crops growing upon land are held to be *personal* property, so far as not to be considered an interest in land, under the Statute of Frauds. (2 Bouvier's Law Dic., "Personal Property.") So annual crops, *if fit for harvest,* may acquire the character and incidents of personal property, so far as to be subject to execution as personal chattels. (*Horne* v. *Gambrell,* W. and W. Con. Rep., sec. 997.) But it has never been held that an ungathered crop, still appendant to the ground, is, under any circumstances, *movable* property. Whilst the question as to whether or not cotton growing is *personal* property within the meaning of the article of the Code referred to, is not presented directly for our determination, we deem it not improper for us to say that in our opinion crops do not become *personal* property, as a general rule, until they are ready to be harvested. Until that time they are regarded as partaking of the realty. (1 Schouler's Per. Prop., p. 123, *et seq.*; Freeman on Executions,

sec. 113.) In this case it appears from the indictment that the lien upon the cotton was given in the month of June, at which time the crop could not have been ready for gathering, and it was not, therefore, personal property.

In our opinion the indictment charges no offense against the law of this State, and the court erred in overruling the defendant's motion in arrest of judgment, based upon its insufficiency; wherefore the judgment is reversed and the prosecution is dismissed.

*Reversed and dismissed.*

Opinion delivered April 12, 1884.